**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M. and S.R.**

**No. 20-0959** (Mingo County 20-JA-16 and 20-JA-17)

**MEMORANDUM DECISION**

Petitioner Mother A.R., by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's November 6, 2020, order terminating her parental rights to A.M. and S.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Cullen C. Younger, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing parent, (2) terminating her parental rights, and (3) denying her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner, the father of A.M., and petitioner's boyfriend abused and neglected A.M. and S.R. The DHHR alleged that it received a referral that A.M., then sixteen years old, was staying at a friend's home with her boyfriend, who was alleged to be between twenty-eight and thirty years old. According to the petition, the referral alleged that A.M. "has had four miscarriages since she has been living with friends" and her boyfriend. The DHHR also alleged that petitioner "pimp[ed] out" A.M. for drug money and that S.R. was staying with her own friends outside the home. According to the petition, petitioner received $2,000 in monthly social security benefits for S.R., but the child did not receive

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

any of the money for food or other basic needs. The DHHR alleged that S.R., then fourteen years old, asked other people for food. The DHHR further alleged that A.M. and S.R. "come and go" from the camper in which petitioner resided. According to the petition, petitioner and her boyfriend abused cocaine, marijuana, and crystal methamphetamine. The DHHR also alleged that petitioner and her boyfriend were using and manufacturing crystal methamphetamine inside their residence. According to the petition, law enforcement had been involved with the family in the past and petitioner's boyfriend was a convicted felon. The DHHR further alleged that the electricity in the residence came from the trailer next door, which belonged to the children's grandmother. The DHHR also alleged that petitioner had "four other children who were removed . . . and raised by grandparents." The DHHR alleged that the referral indicated to Child Protective Services ("CPS") workers that the boyfriend committed domestic violence against petitioner on multiple occasions, allegedly breaking her arms, causing numerous black eyes, and necessitating several visits to the hospital. The DHHR also alleged that petitioner had had an open CPS case since January of 2020 and that she had failed to follow DHHR guidelines. Specifically, the DHHR alleged that petitioner failed to participate in drug screens, despite promising to do so. The DHHR also alleged that petitioner failed to visit with the children via video, stating she was unable to contact them.

Also, according to the petition, the DHHR and law enforcement officers arrived at petitioner's home on June 5, 2020, to take custody of the children. However, the DHHR alleged that neither petitioner, the boyfriend, nor the children were present. The DHHR alleged that petitioner's sister was present nearby and stated that no one was inside the residence, she did not have a key to the camper, and that she had not seen petitioner in three to four days. According to the petition, the camper was unlocked, and, upon entry and investigation, the CPS worker and law enforcement observed drug paraphernalia on a countertop alongside vials that had contained heroin, nonprescribed Suboxone, and white residue powder inside a tin with glass pipes. After being located in the grandmother's camper next door, petitioner denied knowledge of the drugs or drug paraphernalia. According to the petition, petitioner claimed that the boyfriend alone owned the camper. The DHHR alleged that the boyfriend had an outstanding warrant and was arrested at the scene. The CPS worker and law enforcement officers continued to search for the children. The DHHR alleged that S.R. was located in another county after she reached out to a teacher to say that she "was tired of being forced to hide and mov[e] from place to place." The child also indicated she was afraid to resume living with petitioner. According to the petition, A.M. was located at a gas station in another county several weeks later and was transported to the DHHR to be placed with her sister.

The circuit court held a preliminary hearing in July of 2020 wherein petitioner failed to appear but was represented by counsel. At the hearing, a CPS worker testified that the DHHR had an open investigation into petitioner since January of 2020 that included reports of domestic violence, and the children being unfed and constantly shuffled from place to place. The CPS worker testified that petitioner told her where S.R. was living. However, the CPS worker testified that when she investigated that location, she was advised that the child had not lived there in weeks and that she had left no phone number. The CPS worker also testified that there were multiple reports of domestic violence in front of the children and that the children had spoken about witnessing the incidents of domestic violence. The CPS worker also testified that S.R. informed

2

her she was tired of living in temporary homes and lacking a stable life. The circuit court found probable cause to believe that petitioner and the boyfriend abused and neglected the children and granted the DHHR legal and physical custody of the children. After the hearing, petitioner filed a motion for an improvement period and denied that she had abused or neglected the children.

The circuit court held an adjudicatory hearing in August of 2020 wherein petitioner failed to appear but was represented by counsel. The DHHR moved for the circuit court to take judicial notice of prior testimony from the preliminary hearing as well as the court's findings of fact and conclusions of law. The circuit court granted the DHHR's motion and took judicial notice of all prior testimony and findings. The guardian informed the circuit court that S.R. was self-harming and had threatened to commit suicide, that A.M. was in a relationship with a twenty-six-year-old married man, and that the children's therapist had advised her that she could not adequately address the children's needs. In response, the guardian requested that the circuit court place the children in residential treatment for their own safety. The circuit court granted the guardian's request. Based on the evidence, the circuit court found that the children were abused and neglected and that petitioner and her boyfriend had abused the children by failing to protect them.

The next month, the guardian filed a report recommending the termination of petitioner's parental rights. According to the report, A.M. admitted that she was aware of domestic violence in the home and that petitioner's boyfriend had hit her on one occasion two years ago. A.M. also admitted that she was in a relationship with an older married man and hoped to move in with him and take care of his children when she turned eighteen years old. According to the report, S.R. claimed that petitioner would neglect to feed her, throw objects at her, and punch and slap her. Additionally, S.R. claimed that petitioner left cocaine on a table in their home and that petitioner used methamphetamine and heroin. According to the report, petitioner's boyfriend would also hit S.R. The child stated she was afraid of both petitioner and the boyfriend. Finally, S.R. claimed that petitioner would care for A.M. but would not provide for her.

The circuit court held a final dispositional hearing in September of 2020 wherein petitioner failed to appear but was represented by counsel. The DHHR moved the circuit court to take judicial notice of all prior testimony, findings of fact, and conclusions of law; the court granted that motion. Next, a CPS worker testified that it recommended termination of petitioner's parental rights because petitioner failed to comply with the DHHR. According to the worker, the DHHR had offered petitioner various services, including adult life skills classes, individualized parenting, a psychological assessment, and drug screening. The worker testified that petitioner was not compliant with these services. At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period.

In light of the evidence presented at the dispositional hearing, the circuit court found that petitioner was unwilling or unable to correct the conditions of abuse and neglect that necessitated the removal of the children. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental

3

rights.[2] The circuit court also denied petitioner post-termination visitation with the children. The circuit court entered an order reflecting its decision on November 6, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing and neglecting parent. According to petitioner, the DHHR "failed to make any allegations against her that would lead to the termination of parental rights." Specifically, petitioner argues that no evidence was presented that petitioner abused her children or that she could not substantially correct any deficiencies. We disagree.

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). West Virginia Code § 49-1-201

---

[2]The father of A.M. had his parental rights terminated below. The father of S.R. is deceased. According to the parties, the permanency plan for the children is adoption in their current foster home.

defines an "abusing parent" as a "parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect."Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

> physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting parent of the children. The circuit court took judicial notice of evidence presented at the preliminary hearing, which indicated that the DHHR had had an open investigation into petitioner since January of 2020 that included reports that the children were unfed and constantly shuffled from one home to another. According to the CPS worker's testimony, petitioner and her boyfriend also abused cocaine, marijuana, and crystal methamphetamine. The DHHR put on evidence that petitioner and her boyfriend were using and manufacturing crystal methamphetamine inside their residential camper. The CPS worker testified that there were multiple reports of domestic violence in front of the children and that the children had disclosed witnessing incidents of domestic violence. At the adjudicatory hearing, the guardian informed the circuit court that S.R. was self-harming and had threatened to commit suicide as a result of the trauma she had suffered. The guardian also informed the circuit court that A.M. was in a relationship with a twenty-six-year-old married man. In response, the guardian requested the circuit court allow the children to be placed in residential treatment for their own safety.

Moreover, petitioner failed to appear in person for her adjudicatory hearing and produced no contradictory evidence at the adjudicatory hearing to rebut the allegations against her.

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Viewing the record in its entirety, we find that the circuit court did not err in adjudicating petitioner as an abusing parent based on the clear and convincing evidence that she failed to supervise, protect, or provide for the children.

Next, petitioner argues that the circuit court erred in terminating her parental rights rather than granting her a less-restrictive disposition because it was in the best interests of the children to have their mother in their lives. We find no error in the circuit court's termination of petitioner's parental rights.

5

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Here, petitioner's parental rights were terminated because she could not ensure the safety of the children. While petitioner argues that she had no prior history of abuse and neglect petitions and that the children denied any abuse to the DHHR, she does not dispute abusing controlled substances or failing to provide the children a safe and suitable home. Further, contrary to petitioner's claims, the record reflects that at least one of the children did make disclosures of abuse and neglect. A CPS worker testified at the preliminary hearing that S.R. disclosed that she was "tired of being forced to move" and lacked a normal life. According to the guardian's report, S.R. also disclosed that petitioner failed to provide her food and slapped and punched her. Finally, the child disclosed that petitioner would use controlled substances such as cocaine, methamphetamine, and heroin, and leave some of the drugs throughout the residence.

Petitioner denies these claims and contends that she was a victim of domestic violence by her boyfriend and tried to protect the children from his abuse. However, the record reflects that petitioner failed to safely house the children and lacked knowledge of their whereabouts. The DHHR also put on evidence that petitioner continued to reside with the abusive boyfriend, made no attempts to separate herself from him, and participated in drug use with him. Further, petitioner failed to participate in any services offered by the DHHR to remedy the conditions of abuse and neglect, including her allegations of domestic violence. Petitioner briefly argues on appeal that the COVID-19 pandemic led to fewer services being available and caused her difficulty in accessing services. However, petitioner provides no support for this assertion on appeal and failed to raise any such concerns during the proceedings below.

Petitioner also failed to appear before the circuit court for any scheduled hearings, signifying her lack of participation in the proceedings. Additionally, the circuit court heard testimony that petitioner missed nearly all of her visits with the children, except for a single visit with S.R. after the child contemplated suicide. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and

6

achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Finally, petitioner continues to deny that she abused and neglected the children at any point in the proceedings, despite the ample evidence and the circuit court's findings to the contrary. As set forth repeatedly above, petitioner's failure to acknowledge the conditions at issue in his case have rendered them uncorrectable. *In re Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . , results in making the problem untreatable.").

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative than the termination of her parental rights, given that we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because "there is a substantial bond" between her and the children from a lifetime of parenting. We find petitioner's arguments unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found that it was not in the children's best interests to grant visitation. Contrary to petitioner's assertions, the record does not support that there is a substantial bond between her and the children, especially in regard to S.R., who stated she was afraid to live with petitioner. Further, petitioner was still

abusing drugs and failed to exercise visitation with the children during the proceedings. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice John A. Hutchison